```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
    BARBARA JOHNSON,                  1:15-cv-01124-NLH-JS

              Plaintiff,
                                      OPINION
         v.

    CAMDEN CITY SCHOOL DISTRICT,

              Defendant.
```

**APPEARANCES**:

ARI R. KARPF
JULIA W. CLARK
KATIE ANN PILGREN
TIMOTHY STEVEN SEILER
KARPF, KARPF & CERUTTI, P.C.
3331 STREET ROAD, SUITE 128
TWO GREENWOOD SQUARE
BENSALEM, PA 19020
     On behalf of Plaintiff

RICHARD L. GOLDSTEIN
ASHLEY L. TOTH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002
     On behalf of Defendant

**HILLMAN**, District Judge

	Presently before the Court is the motion of Defendant for

1

summary judgment on Plaintiff's claims that Defendant violated her rights under the Family and Medical Leave Act. For the reasons expressed below, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff, Barbara Johnson, was employed by Defendant, Camden City School District, as a head custodian from 1996 until August 30, 2013. As head custodian, Plaintiff was responsible for supervising four adult custodians and, during the summer, four student custodians who were employed through a work program. Even though Plaintiff worked at different schools in Camden over the years, she was stationed at the Cramer School from 2009 through her termination in August 2013.

On June 20, 2013, Plaintiff requested leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., to care for her mother who was diagnosed with cancer. Plaintiff requested that the leave would be taken intermittently from June 2013 through December 2013. The District approved Plaintiff's request.

Plaintiff claims that when she informed the Cramer School's principal, Andrea Surratt, that the District had granted Plaintiff's intermittent FMLA leave request, Surratt became extremely hostile to her. Plaintiff claims that when she began to take time off to care for her mother, Surratt became even more

2

hostile.

On July 18, 2013, a few weeks after Plaintiff began her intermittent FMLA leave, the Cramer School was broken into by two teenage males. The perpetrators stole a flat screen television, X-Box, K-Nect System, DVD player, Dell laptop and a number of games and other items. Video surveillance showed that the boys used a ladder to enter the school through a window which was unlocked and without an alarm.

On July 22, 2013, Surratt met with Plaintiff and requested that she not provide her keys to the student custodians or permit them to work without supervision because it had been reported to her by staff that they had seen students with keys, and it appeared that the teenage burglars knew their way around the school and where to go to get what they wanted. The next day, a student used Plaintiff's keys and did not return them to her.[1] The following morning, July 24, 2013, the student's aunt returned Plaintiff's keys to the front office.

Later that day, Surratt wrote a letter to the District's Director of Facilities, Steve Nicolella. Surratt detailed the

---

[1] The parties dispute how the student obtained Plaintiff's keys. Plaintiff maintains that the student took her keys without her knowledge or permission, while the District contends that Plaintiff knowingly gave the keys to the student. This issue is discussed in more detail below.

3

circumstances of the break-in, and noted that a day after she told Plaintiff not to allow students to use her keys, a student had possession of her keys unsupervised. Surratt deemed Plaintiff's conduct to be insubordinate and endangered the safety and security of the students and staff of the building. Surratt requested a meeting with Plaintiff's union representative and asked that action be taken against Plaintiff. Surratt also informed Nicolella that she was holding Plaintiff's keys until the meeting took place.

On July 24, 2013, Plaintiff met with the Supervisor of Facilities, LaVon Tatem, Plaintiff's union representative, Leon Blackwell, and Surratt. Following the meeting, Tatem wrote a letter to Plaintiff, informing her that her conduct constituted insubordination and caused an unsafe work environment in violation of School Board policy. Tatem recommended termination for this offence, explaining: "You were told not to give your keys to students and did so anyway, then forgot to retrieve them from the student to which the aunt of the student brought the keys back to the building the next day. This also happened days after a break-in at your building which is still being investigated." (Docket No. 27-4 at 8.) Plaintiff was suspended at the end of July 2013, and on August 27, 2013, the District Superintendent and Advisory Board's meeting approved Plaintiff's termination effective August

4

30, 2013.

Plaintiff claims that the District's action violated her FMLA rights in two ways.[2]  First, Plaintiff contends that the District interfered with her FMLA rights when Surratt started to become hostile to her when she informed Surratt of her intention to take intermittent FMLA to care for her ill mother, and then increased her hostility when Plaintiff began taking time off.  Second, Plaintiff claims that her termination for the keys issue was a pretext and the true motivation for her termination was her use of FMLA leave.

The District has moved for summary judgment on both Plaintiff's interference and retaliation claims.  Plaintiff has opposed the District's motion, arguing that material disputed facts require that the matter must go to a jury.

## DISCUSSION

**A.   Subject Matter Jurisdiction**

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

---

[2]   Plaintiff had also lodged claims against the District for age discrimination under the Age Discrimination in Employment Act of 1967 and the New Jersey Law Against Discrimination.  Plaintiff states that she no longer wishes to pursue those claims. (Docket No. 30 at 3 n.2.)

5

**B.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met

6

this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

The FMLA[3] affords eligible employees "a total of 12 workweeks of leave during any 12–month period" in order "to care for the . . . parent of the employee, if such . . . parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Following FMLA leave, an employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions.  See id. § 2614(a)(1).  The FMLA provides relief for interference of these FMLA rights as well as for retaliation for using these FMLA rights.

The FMLA declares it "unlawful for any employer to interfere

---

[3]   Plaintiff has also advanced claims pursuant to New Jersey's FMLA. N.J.S.A. 34:11B-9.  The analysis of Plaintiff's claims is the same for both the federal and state FMLA.

7

with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). Such a claim is typically referred to as an "interference" claim. Sommer v. The Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006). To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer, 461 F.3d at 399 (citation omitted). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. (citation omitted).

An FMLA retaliation claim presents a different analysis. The FMLA regulations provide:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c).

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that:

(1) she took FMLA leave,

8

(2) she suffered an adverse employment decision, and

(3) the adverse decision was causally related to her leave. Lepore v. Lanvision Systems, Inc., 113 F. App'x 449, 452, 2004 WL 2360994, *2 (3d Cir. 2004) (citing Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004)).  Temporal proximity that is "unduly suggestive" satisfies the causation element of a plaintiff's *prima facie* case at the summary judgment stage.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)); see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003)("Even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.")). Using time to satisfy the causation element of the *prima facie* case, however, requires consideration "with a careful eye to the specific facts and circumstances encountered."  Farrell, 206 F.3d at 279 (citing Kachmar v. SunGard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997)).  "There is clearly a difference between two days and nineteen months."  Id. (citations omitted); see also Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (holding that two months was not "unduly suggestive"); Thomas, 351 F.3d at 114 (holding that three weeks was not "unduly

9

suggestive").

If the timing of the events is not "unduly suggestive," the plaintiff can still show a causal link with other circumstantial evidence, such as evidence of ongoing antagonism or inconsistent reasons for terminating the employee. Id. at 280-81 (citing cases). Id. at 280 n.15. Once a plaintiff makes out a *prima facie* case, the usual McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden shifting framework is implicated. Id. (citing Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001)).

Under the McDonnell Douglas standard, after a plaintiff establishes a *prima facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden. Id.

Once the employer answers its relatively light burden by

10

articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production returns to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Prod. Inc., 530 U.S. 2097 (2000)). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citations and quotes omitted). To do this, plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765 (internal citations and quotes omitted).

Plaintiff presents the following actions by Surratt to support both her FMLA interference claim and her retaliation

11

claim:

> Ms. Johnson testified that prior to her application for and use of intermittent FMLA leave, she had a good relationship with Ms. Surratt. Pl. Resp. SOF at ¶ 26. However, this drastically changed after Johnson was approved for and utilized her FMLA leave. Pl. Resp. SOF at ¶ 27. Specifically, Ms. Johnson testified that after seeking FMLA leave, Ms. Surratt became very aggressive, rude and disrespectful towards Ms. Johnson and expressed direct hostility towards Ms. Johnson's application and need for FMLA leave. Pl. Resp. SOF at ¶ 26-27. For example, when Ms. Johnson brought Ms. Surratt the FMLA paperwork, Ms. Surratt became hostile, screamed at Ms. Johnson and made a big commotion over Ms. Johnson's request for leave. Pl. Resp. SOF at ¶ 27. Ms. Surratt also voiced her concerns to the Vice Principal of the Cramer School regarding Ms. Johnson's FMLA leave. Id. Ms. Surratt expressed that she was specifically upset over Ms. Johnson's FMLA as she was concerned that it would impact her attendance rating at the school. Id. On another occasion, Ms. Surratt became very aggressive with Johnson in connection to Ms. Johnson['s] need for a partial day off for an appointment for her mother's care. Id. Ms. Surratt specifically threatened Plaintiff when she requested time off under her intermittent FMLA [leave], telling Plaintiff in an aggressive manner that if Plaintiff took the day, Ms. Surratt would do what she needed to do. Id. Ms. Surratt further expressed her hostility toward Ms. Johnson taking FMLA time by telling Ms. Johnson that she should not take time off and should schedule appointments, and care for her mother after working hours. Id. Ms. Surratt referred to Ms. Johnson's time off as a "privilege" and compared Ms. Johnson to other teachers and staff members. Id. Additionally, when Ms. Johnson attempted to take days off in connection to her intermittent FMLA leave, Ms. Surratt threatened her. Id.
>
> In addition, once Ms. Johnson began taking days off under her intermittent leave, Ms. Surratt expressed concern with the validity of Ms. Johnson's FMLA use and as a result another employee, James Drew, was assigned to watch and monitor Ms. Johnson. Pl. Resp. SOF at ¶ 28-29. Ms. Surratt was angry when she expressed her concerns about Plaintiff's need for time off and she specifically was worried that Plaintiff's absences would impact the cleanliness of the

school building.  Pl. Resp. SOF at ¶ 29. (Docket No. 30 at 14-15, <u>see also</u> Docket No. 30 at 9 for a summary of the same evidence.)

Plaintiff argues that Surratt's discouragement of Plaintiff's use of FMLA time constitutes interference with her FMLA rights. As for her retaliation claim, Plaintiff argues that the timing of events and the direct hostility and antagonism Plaintiff suffered from Surratt, who was the individual responsible for setting into action Plaintiff's termination, demonstrates a causal link between Plaintiff's FMLA rights and her termination sufficient to state a *prima facie* case of FMLA retaliation.

Plaintiff further argues that the District's proffered reason for her termination – that she allowed a student to use her keys unsupervised even after she was told not to – is a pretext to cover the District's true motivation, which was Surratt's retaliation for Plaintiff's FMLA needs and usage because Surratt no longer wanted Plaintiff at her school.  Plaintiff presents the following evidence as pretext:

(1) Hope Perry (the Vice Principal of the Cramer School) testified that she did not believe that Plaintiff should have been terminated for the alleged infraction that Plaintiff committed;

(2) there was no policy against allowing others to use the keys, and in fact James Drew testified that he would give out his

13

keys to other employees to use during the time that he was a head custodian. Drew further testified that it was up to the discretion of the person with the keys to decide whether or not to allow others to use them;

(3) another custodian who also worked under Surratt once misplaced her keys for 1-2 days and received absolutely no discipline for this, even though this action could certainly have put the school at risk or in danger;

(4) Defense witnesses testified that the reason Plaintiff was terminated was because she gave her keys to the student worker. Plaintiff vehemently disputes that she ever did this and disputes that she ever told Surratt that she did. Plaintiff argues that this is a key fact issue based on the credibility of the parties that must be submitted to a jury. (Docket No. 30 at 16-17.)

In response, the District argues that because Plaintiff's FMLA rights were never "chilled" – that is, Plaintiff actually took her FMLA time as she needed to – Plaintiff cannot support her interference claim. In regard to Plaintiff's retaliation claim, the District argues that there is no causal connection between her use of FMLA time and her termination. The District argues that Plaintiff was terminated for insubordination and endangering the staff and students of the school when she allowed a student to use her keys unsupervised the very day after she was told not to do

14

these things.  The District argues that Plaintiff's FMLA leave had nothing to do with the keys issue.

The District further argues that Plaintiff's purported evidence to support pretext is belied by the record evidence.  The District points out that Hope Perry testified that she believed that Plaintiff should not have been terminated if the student took the keys without Plaintiff's permission, not, however, if Plaintiff allowed the student to take her keys.  As to Plaintiff's argument that there was no policy about allowing others to use custodian keys, Plaintiff herself testified that she was not permitted to give her keys to anyone, and James Drew testified that it was inappropriate to give his keys to summer student employees.

The District also points out that at no time during her union grievance procedures did she suggest that she was being retaliated against because of her use of FMLA leave.  Indeed, the grievance notice filed on her behalf provided, in relevant part:

> The statement by Principal Surratt also states that on July 23, 2013, a student worker handed keys in to the main office that was handed to him by Ms. Johnson.  The keys were not handed to him, Ms. Johnson allowed him to take them off the desk to take some boxes to the third floor on the elevator because she was busy waxing a floor.  The student worker never returned the keys to Ms. Johnson.  This was a mistake and an error in judgment on behalf of Ms. Johnson.  A decision that she certainly wishes that she could take back and a decision that she regrets. The wonderful thing about this part of it is that the student worker returned the keys

and no further incidents occurred.

(Docket No. 32 at 17.)  The District argues that Plaintiff cannot establish that the reason for her termination was a pretext.

The Court finds that disputed issues of material fact exist, primarily related to credibility determinations, which compels the denial of the District's summary judgment motion on both Plaintiff's FMLA interference claim and her FMLA retaliation claim.  With regard to Plaintiff's interference claim, Plaintiff contends that Surratt treated Plaintiff with hostility when Plaintiff began to take FMLA leave, and the District denies that Surratt did so specifically with regard to Plaintiff's FMLA leave, rather than the keys issue.  The Court cannot credit one position over the other, and the parties' testimony must be evaluated by a jury.

Further, even though a claim based on 29 U.S.C. § 2615(a)(1) concerns only whether an employer has prevented its employee from availing herself of her FMLA leave, and not whether an employee has suffered an adverse employment action as a result of using her FMLA leave, and during the few weeks prior to Plaintiff's termination she took the leave she needed at the time, Plaintiff's interference claim may still stand.  Plaintiff's termination precluded her from using more than only a few weeks of her afforded six-month leave.  Plaintiff's allegation that Surratt's

16

hostility led to her termination, if true, is the ultimate "interference" with Plaintiff's FMLA rights. Whether this interference was related to Plaintiff's use of her FMLA leave, as Plaintiff's contends, or to Plaintiff's "insubordination," as the District contends, is for a jury to decide.

Plaintiff's FMLA retaliation claim must also be submitted to a jury for resolution. First, Plaintiff has establish her *prima facie* case due to the temporal proximity of Plaintiff's termination and Plaintiff's use of FMLA leave. Plaintiff argues that Surratt's hostility over her use of FMLA leave time caused Surratt to seize on a student's unauthorized use of Plaintiff's keys and set into motion the events that resulted in Plaintiff's termination for insubordination. This is sufficient to satisfy Plaintiff's *prima facie* case for her retaliation claim.

Having established her *prima facie* case, the ultimate issue Plaintiff must prove to support her retaliation claim is that the District's decision - that a student's possession of Plaintiff's keys the day after she was told not to give her keys to student custodians and leave the student custodians unsupervised constituted insubordination, endangered the school's safety, and warranted termination – is so full of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions that a reasonable factfinder could not find it worthy of credence,

17

and hence infer that the District did not act for the asserted non-discriminatory reasons. See Fuentes, 32 F.3d at 764. Plaintiff has presented sufficient disputed material facts to suggest, if her facts and testimony are believed by a jury, that the District's proffered reason for her termination was a pretext.[4]

Plaintiff specifically denies that she provided her keys to the student and denies that she told Surrat that she did, while

---

[4] The District argues that Plaintiff has failed to show that during the meeting between Surratt, Supervisor of Facilities LaVon Tatem, Plaintiff and her union representative which resulted in Tatem's determination that Plaintiff's conduct warranted dismissal, Tatem knew about or considered Plaintiff's FMLA status in his decision. The District also argues that the record is similarly void of any evidence to show that Plaintiff's FMLA status was a consideration in the Superintendent's Advisory Board's final determination to terminate Plaintiff's employment.

In response, Plaintiff argues that she can establish a "cat's paw" case of FMLA discrimination. "The term 'cat's paw' derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by [Judge] Posner in 1990." Staub v. Proctor Hosp., 562 U.S. 411, 415 n.1 (2011) (citation omitted). In a "cat's paw" case, a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Id. To succeed on such a case, a plaintiff must show that the non-decisionmaker exercised such "singular influence" over the decisionmaker that the decision to terminate was the product of "blind reliance." Id. (citation omitted). Here, given Surratt's position as principal, her allegedly hostile reaction to Plaintiff's request for leave, and her initiation and apparent personal prosecution of the complaint against Plaintiff for insubordination, we believe that Plaintiff has proffered sufficient evidence for a jury to conclude that Surratt exercised a "singular influence" over the District's ultimate decision to terminate her so that the District is liable for Surratt's discriminatory animus.

Surratt informed the District that Plaintiff did give her keys to the student and admitted to doing so. Again, the Court cannot assess the credibility of Plaintiff or Surratt, or credit one version of events over the other. Because a jury's belief in Plaintiff's testimony would cast doubt on the District's stated reason for Plaintiff's termination, and suggest that Surratt was motivated by Plaintiff's use of her FMLA leave rather than Surratt's concern about Plaintiff's purported insubordination, the Court cannot grant summary judgment in the District's favor on Plaintiff's retaliation claim.

Beyond Plaintiff's testimony, other evidence in the record, if believed by a jury, could cast doubt on the articulated basis for Plaintiff's termination, as set forth above: (1) Vice Principal Perry's testimony that Plaintiff's termination was not warranted if Plaintiff did not give the keys to the student; (2) the absence of a policy against allowing others to use the keys, and Drew's testimony that he would give out his keys to other employees to use during the time that he was a head custodian, and that it was up to the discretion of the person with the keys to decide whether or not to allow others to use them; and (3) another custodian who also worked under Surratt once misplaced her keys for 1-2 days and received absolutely no discipline. Of course, a jury could credit the District's competing evidence that would

19

impugn Plaintiff's claims, but that dispute is why the matter must be presented to a jury.

## CONCLUSION

The Court is satisfied that the materials in the record demonstrate that there are genuine issues of material fact on Plaintiff's FMLA interference claim and her FMLA retaliation claim, arising under the federal and state versions of the FMLA. The District's motion for motion for summary judgment must therefore be denied as to those claims. Because Plaintiff states that she does not wish to pursue her claims against the District for age discrimination under the AEDA and NJLAD, the District is entitled to judgment in its favor on those claims.[5]

An appropriate Order will be entered.

Date:   March 31, 2017            s/NLH
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[5] Plaintiff cannot voluntarily withdraw those claims once the District filed its motion for summary judgment. See Fed. R. Civ. P. 41(a)(ii) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.").

20